IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPECTRASITE COMMUNICATIONS, LLC, a North Carolina limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CHICAGO HOUSING AUTHORITY, a municipal corporation organized under the laws of the State of Illinois,<br><br>Defendant. | FILED: JUNE 13, 2008<br>08CV3432<br>JUDGE SHADUR<br>MAGISTRATE JUDGE COX<br><br>TC<br><br>Case No._____<br><br>JURY DEMAND |

## COMPLAINT

Plaintiff SpectraSite Communications, LLC ("SpectraSite Communications"), for its Complaint against Defendant Chicago Housing Authority ("CHA"), states as follows:

### THE PARTIES

1. SpectraSite Communications is a Delaware limited liability company with its principal place of business in Boston, Massachusetts. The sole member of SpectraSite Communications is SpectraSite, LLC, a Delaware limited liability company with its principal place of business in Boston, Massachusetts. SpectraSite, LLC's sole member is American Tower Corporation, a Delaware corporation with its principal place of business in Boston, Massachusetts.

2. SpectraSite Communications develops and manages build-to-site tower and rooftop antenna networks and provides site acquisition and site management services for major wireless communication companies.

3. CHA is a municipal corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

4. CHA engages in the development, acquisition, leasing, operation and administration of a Low Rent Housing Program and other federally assisted programs. The CHA's housing portfolio assets are situated throughout the City of Chicago.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over the subject matter in this case pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum or value of $75,000, exclusive of costs and interest, and complete diversity of citizenship exists between the parties.

6. This Court has personal jurisdiction over the Defendant because it is organized under the laws of the State of Illinois and does business within State of Illinois and because this cause of action arises out of and relates to its contacts within the State of Illinois.

7. Venue is proper pursuant to 28 U.S.C. § 1391(a) because CHA conducts its operations and business within this judicial district and the transaction(s) complained of occurred in this judicial district.

## FACTUAL ALLEGATIONS

8. In 1997, CHA entered into an agreement ("the Agreement") with Apex Site Management, L.P. ("Apex"). (A true and correct copy of the Agreement is attached as Exhibit A).

9. The Agreement designates Apex as CHA's exclusive representative and Manager to license and manage sites on the rooftops of certain CHA buildings for use as wireless communications transmitting sites. (Ex. A, ¶ 3).

10. The Agreement provides that the Manager is entitled to receive a Base Management Fee equal to 25% of the Aggregate License Fees collected from wireless carriers. (Ex. A, ¶ 5(a)).

11. SpectraSite Communications is Apex's successor-in-interest. As Manager under the Agreement, SpectraSite Communications continues to perform the Management functions

set forth in the Agreement, which include, *inter alia*, inventory and assessment services for equipment located on CHA properties, evaluation of CHA properties for use as transmitting sites, marketing and promotion of CHA properties, negotiation of license agreements and collection and administration of license fees from licensees using CHA properties as transmitting sites. (Ex. A, ¶ 3).1

12. From the inception of the Agreement's term through approximately the Fall 2006, the Manager received full payment of the Management Fees directly from the wireless carriers consistent with the Manager's obligation to collect and remit portions of those fees to CHA.

13. During the Fall of 2006, however, CHA, unilaterally and without authority or consideration of the Manager, instructed various wireless carriers to begin making payments directly to CHA.

14. Since the time it directed payments to be sent directly to it, CHA has failed to pay any Management Fees to the Manager.

15. CHA's obligation to make timely payment to the Manager remains, irrespective of CHA's instruction to the wireless carriers that they pay CHA directly.

16. SpectraSite Communications has at all times since the Fall 2006 continued to fully perform its managerial responsibilities under the Agreement.

17. As of the end of March 2008, CHA owes SpectraSite Communications in excess of $115,000.00 in unpaid Base Management Fees.

18. Demand has been made upon CHA to promptly tender payment of the unpaid amounts, and CHA has refused to do so.

## COUNT I
## BREACH OF CONTRACT

19. Paragraphs 1 through 18 are reincorporated by reference and realleged as Paragraph 19.

20. A contract exists between SpectraSite Communications and CHS as set forth in the Agreement attached hereto as Exhibit A.

21. SpectraSite Communications has fully performed and continues to fully perform its managerial responsibilities under the Agreement.

22. CHA's direction to various wireless carriers to issue payment directly to it instead of the Manager is a breach of the Agreement. (Ex. A, ¶ 3(i)).

23. CHA's failure to pay the Manager the Basic Management Fees owed under the Agreement, despite continuing to receive those fees directly from various wireless carriers, is a breach of the Agreement. (Ex. A, ¶ 5(a)).

24. As a result of CHA's breach of its contractual obligations, SpectraSite Communications has suffered damages in excess of $115,000.00.

## PRAYER FOR RELIEF

Plaintiff, SpectraSite Communications, LLC respectfully prays for the following relief:

(i)   a judgment in favor of SpectraSite Communications LLC and against Defendant Chicago Housing Authority for compensatory damages, plus interest; and

(ii)  all other and further relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

SPECTRASITE COMMUNICATIONS, LLC

Dated: June 13, 2008                By:_____s/ David M. Rownd_____

David M. Rownd, Esq., #6207951
Timothy L. Binetti, Esq. #6282534
THOMPSON COBURN LLP
55 East Monroe Street
Chicago, Illinois 60603
312.346.7500

*Attorneys for SpectraSite Communications LLC*

# EXHIBIT A

**APEX SITE MANAGEMENT, L.P.**
555 North Lane, Suite 6138
Conshohocken, PA 19428

_____, 1997

The Chicago Housing Authority
626 West Jackson Boulevard
Chicago, IL 60661-5601
Attention: Joseph Shuldiner

**SCANNED**

RE: Management of Transmitting Sites

Dear Sir:

The undersigned, Apex Site Management, L.P. ("Manager"), agrees to provide to you ("Owner") the services described below (the "Manager Services"), and by execution of this letter (this "Agreement") by Owner this _____ day of _____, 1996 (the "Effective Date"), Owner agrees to accept the Manager Services, on the terms and subject to the conditions described in this Agreement.

1. **Capitalized Terms.** Each capitalized term used in this Agreement, and not otherwise defined, shall have the meaning ascribed to such term on Exhibit A hereto.

2. **Properties Subject to this Agreement.** This Agreement relates to the real properties owned (or otherwise controlled) by Owner identified on Exhibit B hereto (the "Properties").

3. **Appointment of Manager and Manager Services.** During the Term of this Agreement, subject to the terms and conditions set forth herein, Manager shall perform the Manager Services. Manager shall be Owner's sole and exclusive representative to license and manage Potential Sites for use as Transmitting Sites and, in that regard, Owner shall refer to Manager all offers or inquiries regarding the use of the Potential Sites as Transmitting Sites. The Manager Services, in respect of which Manager shall be compensated in accordance with Paragraph 5 below, include the following:

    a. **Inventory and Assessment.** Inventory Licensee Equipment located on the Property with respect to Existing Rooftop Tenants; assess and evaluate the Potential Sites for use as Transmitting Sites.

    b. **Marketing.** Actively market and promote the Potential Sites to prospective Licensees as Transmitting Sites, such efforts to include, without limitation, the preparation and distribution of a database which identifies and describes the Potential Sites together with other properties.

    c. **License Agreements.** Prepare and negotiate, for Owner's ultimate approval and execution, License Agreements with Licensees for use of the Potential Sites as Transmitting Sites; prepare and negotiate renewals and extensions of License Agreements and monitor related expiration/renewal dates.

    d. **Licensee Activities.** Review and evaluate all plans and specifications for the installation and maintenance of Licensee Equipment by Licensees (the "Licensee Activities") to confirm, among other things, that the installation of the Licensee Equipment preserves the appearance and physical integrity of the Potential Sites. Such duties shall also include the review and evaluation of all contractors and subcontractors to be employed by each Licensee for the Licensee Activities, the verification that each Licensee shall use only Owner-approved contractors to perform the Licensee Activities in order to preserve and protect applicable rooftop warranties, the verification that each Licensee has obtained all required building permits and certificates, and that the Licensee Equipment and Licensee Activities comply with applicable Laws; the inspection of the Licensee Activities to verify that same have been completed in accordance with Licensee's plans and specifications, in accordance with applicable Laws, and in compliance with the requirements of applicable rooftop warranties, and the periodic inspection of the Licensee Equipment to evaluate its condition, such inspection to occur no less frequently than annually.

    e. **Compliance Supervision.** Supervise the use of Site Space to confirm that each Licensee is operating the Licensee Equipment in compliance with, and consistent with, the terms of its License Agreement and applicable Laws.

    f. **Radio Frequency Interference.** Monitor and assist in the resolution of any radio frequency interference problems among Licensees. Provide engineering services as required to control radio frequency compatibility between licensees and moderate interference disputes, if any. Ensure against any interference problems with in-house communications at the Properties.

    g. **Books and Records.** Maintain such books and records with respect to the Licensee Equipment, the License Agreements, and the Licensees as may be necessary for Owner to satisfy all governmental reporting requirements with respect to the use of Site Space.

    h. **Licensee Relations.** Facilitate communications with Licensees to the extent required by this Agreement, Licensee Agreements or by Law or as may be reasonably requested by Owner.

    i. **Collection and Remittance.** Collect license fees from Licensees and remit appropriate amounts to Owner after deduction of management fees then due to Manager hereunder; support such remittances with schedules detailing the number of Licensees in the Site Space, the calculation of license fees due and collected and of management fees earned; send such remittances and schedules to Owner within fifteen (15) days after the end of the month in which such licensee fees are collected by Manager; and hold any security deposits and other deposits from Licensees in accordance with applicable Laws.

    j. **Insurance.** Verify that any contractor or subcontractor which performs any work on the Potential Sites on behalf of any Licensee from time to time shall have the types and amounts of insurance set forth on Exhibit "C1" hereto; obtain from each Licensee, Licensee contractor and Licensee sub-contractor and furnish to Owner, before the commencement of any construction, installation or modification, copies of insurance certificates for each Licensee and any applicable contractor or subcontractor; at least thirty (30) days prior to expiration, furnish to Owner copies of all renewal certificates of insurance from each Licensee. A copy of Manager's insurance certificate is attached as Exhibit "C2" and Manager agrees to maintain such coverage throughout the Term of this Agreement.

_____, 1996
Page 2~~2~~

k. **Notices.** Inform Owner of any notices which Manager receives in connection with the Licensee Activities and the Site Space, including, without limitation, notices received from any governmental body, insurance carrier or user of the Site Space.

l. **Optional Services with Respect to Existing Rooftop Tenants and Tenant Sites.** Simultaneously with the execution of this Agreement, Owner may, in its sole discretion, elect to engage Manager to provide the Manager Services to Existing Rooftop Tenants in accordance with the terms of such Schedule. In the absence of such election, Owner acknowledges that Manager Services will not be provided to Existing Rooftop Tenants. In addition, Owner may, from time to time, in its sole discretion, elect to engage Manager to provide Manager Services with respect to any Tenant Site established during the Term of this Agreement. Manager Services provided pursuant to this Paragraph 3(l) are hereinafter referred to as "Optional Services."

4. **Owner Approval of Plans and License Agreements** Owner shall have the right to approve in its sole discretion (i) all License Agreements; (ii) the specific location of each Transmitting Site; and (iii) to the extent provided in the License Agreement, the plans and specifications for the construction, installation or modification of Licensee Equipment. Manager will negotiate License Agreements consistent with Owner's licensing guidelines, if applicable, (as the same may be revised from time to time), a current copy of which are attached hereto as **Exhibit "D"**. Owner shall either accept, reject or present changes to the proposed License Agreement to Manager within seven (7) business days of receiving a License Agreement executed by a prospective Licensee. Owner will designate a representative to coordinate Owner's review of plans and License Agreements.

5. **Fees.**                                                                                                                    _reviewed_

a. **Fees for Manager Services.** As compensation for providing the Manager Services to Owner (other than Optional Services), Manager shall be paid a management fee with respect to each License Agreement with a Licensee of twenty-five (25%) of the Aggregate License Fees collected from each Licensee during the term of the License Agreement and any Renewals thereof. The management fees payable pursuant to this Paragraph 5(a) are hereinafter referred to as the "Base Management Fees." The Base Management Fees shall be Manager's sole compensation from Owner for performing the Manager Services with respect to Licensees, and Owner shall not be obligated to reimburse Manager for expenses incurred in connection therewith. Base Management Fees shall be payable solely out of Aggregate License Fees actually collected from Licensees. Manager acknowledges that Owner has been contacted directly by two prospective Licensees and that within thirty (30) days following full execution of this Agreement, Owner will specify the identity of these two potential Licensees. In the event that License Agreements are consummated with these two (2) Licensees during the initial six (6) months of the Term of this Agreement, the Base Management Fee for such License Agreements completed within such six (6) month period will be discounted to seventeen and one-half percent (17.5%). After such six (6) month period, the Base Management Fee of twenty-five percent (25%) will apply to all License Agreements.

b. **Compensation for Optional Services.** Included on Schedule 1 hereto is a schedule of fees payable for Optional Services.

c. **Post-Termination Protection Period.** Within ten (10) days after the expiration of the Term hereof, Owner and Manager shall provide to each other a list identifying all persons or entities with whom either Owner or Manager respectively have engaged in active negotiations, as evidenced by site walks at the Properties, draft Leases in negotiations, or other independently verifiable means within the four (4) ~~six (6)~~ month-period immediately prior to the end of the Term of this Agreement for the use of the Potential Sites as a Transmitting Site. Manager shall receive a Base Management Fee if within four (4) ~~six (6)~~ months after termination of the Term of this Agreement (other than pursuant to the first sentence of Paragraph 7(a) below), Owner enters into a License Agreement with any such person or entity for the use of the Potential Sites as a Transmitting Site.

d. **Construction Oversight Reimbursement.** Manager may seek reimbursement from Licensees ("Construction Oversight Reimbursement") in connection with: (i) evaluating and reviewing each Licensee's plans and specifications for the Site Space; (ii) inspecting each Licensee's installation or modification of the Licensee Equipment; and (iii) generating punchlists and following up with the Licensee until the installation or modification is completed in accordance with the approved plans. Construction Oversight Reimbursements will be explicitly provided for in License Agreements, will be paid only by Licensees, will be fully disclosed to Owner, and will be capped at $2,500 per installation or modification.

6. **Term.** Subject to Paragraph 7 below, the initial Term of this Agreement shall be for a period of five (5) years, beginning on the Effective Date. Thereafter this Agreement shall continue for one year increments after the initial term upon the written mutual consent of Owner and Manager unless, not less than ninety (90) nor more than one hundred twenty (120) days prior to the expiration of the applicable Term, either party hereto terminates this Agreement as of the end of such Term by giving the other party written notice.

Following the two and one-half (2.5) year anniversary of this Agreement, either party may terminate this Agreement, by providing written notice to the other party of such termination within the thirty (30) day period following the two and one-half (2.5) year anniversary date, in the event that the annualized revenue run rate of Aggregate License Fees due to Owner pursuant to executed License Agreements does not exceed $125,000 at that time. If the annualized Aggregate License Fees exceed $125,000 at such date, then this Agreement will remain in full force and effect as defined in Section 6.

7. **Termination.**

a. **Owner's Right to Terminate.** If Manager engages in fraud, material misrepresentation or willful misconduct to the detriment of Owner or materially breaches this Agreement, including but not limited to (i) failing to remit net License Fees to Owner in accordance with 3(i) above, (ii) failing to promptly resolve RF interference with Owner's operations, (iii) creating a major safety or code violation for Owner in connection with this Agreement or (iv) being convicted of a criminal or civil offense, Owner shall have the right to terminate all of Manager's rights under this Agreement upon written notice to Manager, including any and all rights to receive any compensation hereunder. If Manager otherwise defaults in the performance of any of its covenants or obligations described herein and such default continues for thirty (30) days or more after written notice thereof from Owner, Owner shall have the right to terminate this Agreement, including Manager's right to receive all compensation hereunder other than Base Management Fees; provided, however, that following such termination, the Base Management Fees otherwise payable pursuant to Paragraph 5(a) above shall be reduced to fifteen percent (15%) of the Aggregate License Fees collected from Licensees, and Owner shall have the right to collect all license fees. In the event of a termination pursuant to the immediately preceding sentence, Owner shall have the option, at its sole discretion, to extinguish Manager's right to receive Base Management Fees with respect to Licensees upon the payment to Manager of a lump sum equal to the net present value (discount rate based on the then current rate of 5 year United States treasury notes) of the Base Management Fees which would have been payable to Manager under each individual License Agreement, in accordance with the terms of this Paragraph 7(a) and Paragraph 5(a) above, for the sixty (60) months following such termination. Owner shall further have the right to collect its reasonable out of pocket

_____, 1996
Page 32

costs, paid by it in curing or correcting any default of Manager in the performance of any of its covenants or obligations described herein, and deduct from the foregoing management fees such reasonable costs and expenses of resolving or remedying Manager's defaults or breaches hereunder, to the extent such costs and expenses are paid by Owner.

    b. **Manager's Right to Terminate**. If one or more of Owner's representations or warranties is false in any material respect or if Owner defaults in the performance of any of its covenants or obligations described herein, and such default continues for thirty (30) days or more after Owner's receipt of written notice thereof from Manager, Manager shall have the right to terminate this Agreement without further liability or obligation to Owner; provided, however, Manager shall retain its right to continue to collect license fees from Licensees and to receive the Base Management Fee during the remainder of the term of any unexpired License Agreements with Licensees, including any Renewals thereof, and provided further that in the event of an Owner breach, the Base Management Fee will remain at twenty-five percent (25%) of the Aggregate License Fees collected from each Licensee.

    c. **Sale of Property**. In the event of a bona fide sale or transfer directly or indirectly of all or substantially all of Owner's ownership interest in a Property to an unaffiliated entity, Owner shall either (i) cause the purchaser of the Property to assume all of Owner's obligations under this Agreement, or (ii) cause the purchaser of the Property to assume only Owner's obligations under this Agreement to pay the Base Management Fees to Manager payable in accordance with the terms of Paragraph 5(a) above, or (iii) terminate this Agreement in its entirety by payment of a lump sum equal to the Base Management Fees which would have been payable to Manager, in accordance with the terms of Paragraph 5(a) above, over the sixty (60) months following such termination.

    d. **Post-Termination Procedures**. Upon expiration of this Agreement for any reason (including an early termination pursuant to Paragraph 7 above), and subject to the other terms of this Agreement, Manager shall take all reasonable action to cause an orderly transition of the management and operation of the Site Space and deliver the following to Owner or Owner's duly appointed representative on or before thirty (30) days following the termination date: (i) a final accounting for license fees and the Site Space as of the date of termination; (ii) any balance or monies due to Owner or Licensee security deposits, or both, held by Manager with respect to the Site Space; and (iii) all License Agreements, books, records, contracts, drawings, leases, keys, correspondence, receipts for deposits, unpaid bills, summaries of all licenses in existence at the time of termination, and all other papers or documents which pertain to the Site Space.

    e. **Remedies Cumulative**. Each and every one of remedies provided to Owner or Manager by this Agreement are cumulative and shall not be exclusive of any other of said remedies allowed by law or equity to Owner or Manager.

8. **Indemnification**.

    a. **Manager's Indemnity**. Manager and its "Affiliates" shall indemnify, defend, and hold harmless Owner, its partners, shareholders, members, agents, employees, officers, directors, and lenders (collectively "Affiliates") against any liabilities, damages, losses, or claims incurred by Owner or its Affiliates arising out of: (i) any failure of Manager promptly to perform any obligations of Manager under this Agreement provided such failure was not caused by Owner or by events beyond the reasonable control of Manager; and (ii) any malfeasance or misfeasance on the part of Manager or its employees; and (iii) any acts of Manager or Manager's employees beyond the scope of Manager's authority under this Agreement not authorized or ratified by Owner.

    b. **Owner's Indemnity**. Owner shall indemnify, defend, and hold harmless Manager and its Affiliates, against any liabilities, damages, losses, or claims incurred by Manager or its Affiliates, arising out of: (i) any failure of Owner promptly to perform any obligations of Owner (A) under this Agreement, provided such failure was not caused by Manager or by events beyond the reasonable control of Owner or (B) under any License Agreement; and (ii) any malfeasance or misfeasance on the part of Owner or its employees. ~~Owner shall look solely to the Licensee in the event of any damage to the Properties by reason of Licensee's breach of any License Agreement and shall hold Manager harmless from and against any liability in respect thereof.~~ Notwithstanding the foregoing, this indemnification obligation shall not extend to personal injury claims arising from activity at the Properties undertaken in connection with this Agreement or with License Agreements, and is limited to Owner's contractual obligations pursuant to this Agreement and License Agreements.

9. **Brokers**. Each party hereto shall be responsible for any obligations or liability, contingent or otherwise, for brokerage or finder's fees or agents commissions or other like payment arising out of such party's dealings with third parties. Each party hereto agrees to indemnify and hold the other party harmless against and in respect to any such obligation or liability based in any way on any agreement, arrangement or understanding claimed to have been made by such party with any third party.

10. **Independent Contractors**. Nothing contained in this Agreement shall be deemed to create a partnership or joint venture between the parties who shall at all times be independent contractors. Except as expressly provided for herein, neither party shall be, or hold itself out to be, the agent of the other party, and under no circumstances shall either party have the authority to bind or commit the other party. Neither party shall be empowered to accept legal process on behalf of the other party.

11. **Non-Recourse**. Owner's liability hereunder shall be limited to its interest in the Properties and in no event shall Owner or its Affiliates have any personal liability hereunder.

12. **Miscellaneous**.

    a. **Notice**. Any notice or communication given pursuant hereto by either Owner or Manager to the other party, shall be in writing and hand delivered, or mailed by registered or certified mail, postage prepaid, return receipt requested, or sent by an overnight courier which maintains a record of delivery, to the following addresses or to such other address as may be designated in writing by either party:

| | |
|---|---|
| If to Manager: | APEX SITE MANAGEMENT, L.P.<br>555 North Lane, Suite 6138<br>Conshohocken, Pa 19428<br>Attention: Managing General Partner |
| If to Owner: | The Chicago Housing Authority<br>626 West Jackson Boulevard<br>Chicago, IL 60661-5601<br>Attention: Joseph Shuldiner |

_____, 1996

Page 43

Notice given by mail shall be deemed effective three (3) days after the date of mailing thereof; notice given by any other means shall be deemed effective upon receipt.

    b. **Confidentiality; Cooperation.** Each party agrees, for itself and all persons employed by such party, to hold in confidence and not to use or disclose to others, any confidential or proprietary information of the other party heretofore or hereafter disclosed to such party, except to the extent that (i) such party specifically authorizes the other party to disclose any of the foregoing to others, (ii) such information enters the public domain, (iii) such information is obtained from independent third parties not subject to any confidentiality or other agreement with the parties hereto, or (iv) such disclosure is required by law, rule or regulation or the valid order of a court or administrative agency. Owner and Manager shall cooperate to effectuate the purposes of this Agreement. Without limiting the generality of the foregoing, (i) to the extent readily available, Owner shall provide to Manager information regarding the Properties relevant to the establishment of Transmitting Sites thereon, and (ii) Owner shall provide to Manager and prospective Licensees reasonable access to the Potential Sites to facilitate (A) the establishment of Transmitting Sites and (B) Manager's performance of the Manager Services. All ongoing access to the Properties shall be subject to reasonable security, safety and other procedures established by Owner from time to time. Owner will designate a representative to coordinate Manager and Licensee access to each Potential Site.

    c. **Compliance with Laws.** Both parties desire that the transactions contemplated hereby be effected and carried out in a manner that is in compliance with all Laws.

    d. **Waiver.** The failure of either Owner or Manager to enforce at any time any of the provisions hereunder, shall not be construed to be a waiver of such provisions or of the right of such party thereafter to enforce any such provisions.

    e. **Entire Agreement.** This instrument contains the entire agreement between Owner and Manager with respect to the subject matter hereof. There are merged herein all prior and collateral representations, promises, and conditions in connection with the subject matter hereof. Any representation, promise, or condition not incorporated herein shall not be binding upon either party. This Agreement supersedes and is in lieu of all existing agreements or arrangements between the parties.

    f. **Severability.** The unenforceability of any provision hereof which does not effect the parties material obligations hereunder shall not effect the remaining provisions of this Agreement, but rather such provision shall be severed and the remainder of this Agreement shall remain in full force and effect.

    g. **Assignment.** In connection with the sale or transfer of a Property, Owner may assign its rights, duties and obligations under this Agreement without the consent of Manager, subject to the acceptance by the assignee of all of the obligations of Owner hereunder. Manager may not assign its rights, duties and obligations under this Agreement without the prior written consent of Owner, such consent not to be unreasonably withheld or delayed. Notwithstanding the foregoing, a transfer of this Agreement in connection with the sale or transfer of all or substantially all of the assets or ownership interests of Manager shall not require the consent of Owner.

    h. **Counterparts.** This Agreement may be executed in any number of counterpart copies, each of which shall be deemed an original, but which together shall constitute a single instrument.

    i. **Choice of Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the jurisdiction of the state of Illinois, Cook County, without regard to the principles of conflict of laws thereunder.

    j. **Headings.** All paragraph headings and captions used herein are for the convenience of the parties only and shall not be deemed part of the text, or affect the meaning of this Agreement.

    k. **Successors and Assigns.** This Agreement is binding on the parties hereto and their respective heirs, successors and assigns.

    l. **Survival.** Any provisions of this Agreement which in order to have effect must survive the expiration or termination of this Agreement shall be deemed to survive.

    m. **Representations and Warranties.** By execution of this Agreement, each party hereto represents and warrants that it is duly organized, validly existing, and in good standing under the laws of the State in which it is organized and has all requisite power and authority to enter into this Agreement and perform its obligations hereunder (and, in the case of Owner, to operate and lease Site Space); and (ii) the execution and delivery of this Agreement has been duly and validly authorized and approved by it and this Agreement is valid and binding upon it in accordance with its terms.

    n. **Mutual Release.** Neither Owner nor Manager shall be obligated or liable to the other with respect to license fees and/or management fees not collected from a Licensee, provided that the failure to collect is not caused by the other party's affirmative act or omission.

    o. **No Modification to License Agreements.** Owner shall not amend, modify or waive any of its rights with respect to any License Agreements in a manner which adversely affects Manager's rights hereunder without Manager's prior written consent, which shall not be unreasonably withheld.

_____, 1996

Page 56

If the terms of this Agreement are acceptable to you please execute and return the enclosed copy hereof.

Sincerely,

APEX SITE MANAGEMENT, L.P.

By: G2 Ventures, Inc., its Managing General Partner

By: _____
Name: ~~Jeffrey E. Ginsburg~~ Alexander L. Gellman
Title: President

Intending to be legally bound hereby,
the undersigned Owner hereby agrees to
and accepts the terms of this Agreement:

CHICAGO HOUSING AUTHORITY

_____ (Check) Owner has elected Optional
Services for Existing Rooftop Tenants as
set forth on Schedule 1 hereto.

By: _____
Name: CARMEN E. BROWNE
Title: Acting Executive Deputy Director

_____, 1996
Page 66

## SCHEDULE "1"

### OPTIONAL SERVICES

A. <u>Tenant Sites</u>. Notwithstanding anything to the contrary set forth in the Agreement, Owner shall be permitted to establish Tenant Sites during the Term of the Agreement. Owner may, from time to time, at its sole option, engage Manager to provide Manager Services in respect of any or all of such Sites and Owner shall pay to Manager the following fees for Manager Services rendered in respect thereof. During the Term of this Agreement, as compensation for providing the Manager Services with respect to Tenant Sites, Manager shall receive a management fee equal to the greater of (i) fifteen percent (15%) of "Tenant Site Rental," or (ii) $100 per month. For purposes hereof, the term "Tenant Site Rental" shall mean amounts collected by Manager or Owner as rental or other compensation with respect to Tenant Sites, exclusive of reimbursements and pass-throughs for utilities, taxes and other expenses. If Owner does not elect to have Manager provide the Manager Services with respect to any Tenant Site, no Manager Services shall be provided and no management fee shall be payable to Manager in respect thereof.

B. <u>Optional Services Package for Existing Rooftop Tenants</u>.

1. By initialing below, Owner hereby elects to engage Manager to perform the Optional Services. Owner acknowledges that: (i) Manager shall not be liable in any way for actions or omissions of any Existing Rooftop Tenant prior to Owner's election to engage Manager to perform the Optional Services; and (ii) Manager shall perform the Optional Services subject to the terms of any existing binding contractual commitments between Existing Rooftop Tenants and Owner or Owner's authorized agents, and shall not be liable for any Optional Services which Manager is unable to perform as a result of any such prior binding contractual commitments.

2. As part of the Optional Services, Owner shall use its reasonable best efforts to: (i) identify all Existing Rooftop Tenants and provide Manager with any information, including any installation plans, in Owner's possession regarding the antennas and related equipment installed by such Existing Rooftop Tenants; (ii) conduct an inventory of Licensee Equipment located in the Site Space with respect to Existing Rooftop Tenants; and (iii) to the extent of Owner's authority, compel Existing Rooftop Tenants to cooperate with regard to the management, investigation and resolution of any interference issues.

3. During the Term of this Agreement, as compensation for providing the Optional Services, Manager shall receive (i) a management fee of ten percent (10%) of the "Rooftop Rentals" collected from Existing Rooftop Tenants plus twenty-five percent (25%) of any incremental "Rooftop Rentals," generated pursuant to renewal terms, collected from "Renewed Existing Rooftop Tenants." For purposes of this Agreement, (i) the term "Rooftop Rentals" shall mean amounts collected by Manager or Owner from Existing Rooftop Tenants as rental or other compensation for the operation of Transmitting Sites, exclusive of reimbursements and pass-throughs for utilities, taxes and other expenses; and (ii) the term "Renewed Existing Rooftop Tenant" shall mean any Existing Rooftop Tenant which has undergone a Renewal.


OWNER HEREBY ACCEPTS OPTIONAL SERVICES
FOR EXISTING ROOFTOP TENANTS:


_____
INITIAL

Name:
Title:

## EXHIBIT "A"

## DEFINITIONS

"Aggregate License Fees" shall mean all license fees and other amounts collected by Manager or Owner from any Licensees pursuant to any License Agreements plus any option fees collected from prospective Licensees, but exclusive of reimbursements and pass-throughs from Licensees to Owner with respect to utilities, taxes and other expenses.

"Existing Rooftop Tenant" shall mean any entity with Licensee Equipment of any type installed on a Potential Site on the Effective Date;

"Laws" shall mean rules and regulations of the Federal Communications Commission, the Federal Aviation Administration, and all other federal, state and local laws, in each case, applicable to the transactions contemplated by the Agreement.

"License Agreement" shall mean any license, lease or other understanding, whether oral or written, pursuant to which rights to establish a Transmitting Site are granted.

"Licensee" shall mean any entity utilizing the Site Space for a Transmitting Site during the Term of this Agreement or pursuant to Paragraph 5(c), including without limitation, entities establishing Tenant Sites and, Existing Rooftop Tenants, in each case, if the Optional Services are elected in respect thereof pursuant to Paragraph 3(l);

"Licensee Equipment" shall mean radio, wireless, or satellite communications transmission and receiving antennas and equipment;

"Potential Sites" shall mean any space upon the Properties (including any space upon or within any buildings or improvements on the Properties) which may from time to time be used for the installation, operation and/or maintenance of Licensee Equipment;

"Renewal" shall mean any and all renewals or extensions of a License Agreement, or other agreement or understanding whether oral or written, without removal of the Licensee Equipment from the Site Space or a material interruption in the use of the Transmitting Site. Any License Agreement, or other agreement or understanding whether oral or written, shall be deemed renewed unless the Licensee Equipment is removed from the Site Space and license fees are no longer paid;

"Site Space" shall mean any portion of the Potential Sites where Licensee Equipment is located;

"Tenant Site" shall mean a Transmitting Site established in the Site Space which is owned, leased or licensed by tenants in occupancy of a portion of a Property pursuant to a written agreement with the Owner, provided that the primary purpose for such tenant's occupancy of the Property is not to establish or operate a Transmitting Site (it being understood that an entity that has established a Tenant Site on or prior to the Effective Date shall be deemed to be an Existing Rooftop Tenant); and

"Transmitting Site" shall mean any radio, wireless or satellite communications transmitting and/or receiving location.

## EXHIBIT "C1"

### CONTRACTOR INSURANCE

1. Workmen's Compensation Insurance in accordance with the laws of the State with jurisdiction.

2. Employers' Liability Insurance in an amount not less than $500,000.

3. Comprehensive General Liability on an occurrence basis for:
   a. bodily injury
   b. property damage liability with limits of not less than $1,000,000 combined single limit each occurrence.

4. Comprehensive Automobile Liability (if applicable):

   Comprehensive form automobile liability covering owned, hired and non-owned vehicles with limits of $1,000,000 combined single limit each accident.

5. To the extent that design or engineering services form a part of Contractor's consulting or supervisory services, Contractor will provide evidence from the provider of such services to Owner of Professional Liability insurance in an amount not less than $2,000,000 covering all design or engineering aspects of the work.

6. Excess Liability (Umbrella) Insurance with limits of $2,000,000 per occurrence.

## EXHIBIT "C2"

### MANAGER INSURANCE

Certificate attached.

## EXHIBIT "D"

### OWNER'S LICENSING GUIDELINES

| | |
|---|---|
| Purpose: | Telecommunications transmission and receiving site |
| Minimum Initial Term: | Five years. |
| Renewal Terms: | At least one five-year renewal period, at option of Licensee. |
| License Fees: | To be negotiated. |
| License Fee Escalators: | Annual CPI. |
| Improvements: | All at Licensee's sole expense. |
| Costs/Pass-Throughs: | Separate electrical metering.<br>Licensee pays all operating costs.<br>Licensee pays incremental costs re property tax assessments. |
| Licensee Access: | Same as other Property tenants for public areas.<br>Upon reasonable notice for restricted areas.<br>24-hour emergency access available. |
| Indemnification: | Owner indemnified against personal injury or property claims. |
| Non-Recourse: | Owner will have no personal liability.<br>Licensee looks only to equity in Property. |
| Insurance: | See below. |
| Licensee's Credit Worthiness: | At least $1.0 million net worth.<br>Financials provided on request. |
| Mechanic's Liens: | All work done without liens.<br>Any liens filed for labor or materials for Licensee discharged by Licensee at Licensee's sole expense. |
| Reimbursement of Costs: | Licensee may reimburse Owner and/or Manger for costs or expenses incurred in connection with the installation or modification of Licensee Equipment on the Site Space (including costs or expenses incurred in respect of the evaluation and review of any plans or specifications developed in connection therewith). |

Licensee Insurance:
1. Workmen's Compensation Insurance in accordance with the laws of the State with jurisdiction.
2. Employers' Liability Insurance in an amount not less than $500,000.
3. Comprehensive General Liability on an occurrence basis for:
   a. bodily injury
   b. property damage liability with limits of not less than $1,000,000 combined single limit each occurrence.
4. "All risk" property insurance on 100% replacement value of Licensee Equipment.
5. Excess Liability (Umbrella) Insurance with limits of $2,000,000 per occurrence.

# CHICAGO HOUSING AUTHORITY
Private Management Administration
37 West 47th Street, Chicago, IL 60609
Telephone # 567-1825, Fax # 624-0878

| PROPERTY NAME/ ADDRESS | SITE MANAGEMENT STAFF | PHONE/FAX/ PAGER | MANAGEMENT COMPANY | PRINCIPAL | CONTACT PERSON | PHONE/FAX/ PAGER | MANAGEMENT ANALYST | TOTAL UNITS |
|---|---|---|---|---|---|---|---|---|
| Rockwell Gardens 2500 W. Jackson Chicago, IL 60612 | Joe Red, Manager | (312) 455-0265 | East Lake/Garoader 2851 S. Michigan Avenue Chicago, IL 60611 | Leroy Bacquier Ann Harris | 842-5500 842-0765 Fax | John Mason | 1155 |
| Senior Building 150 South Campbell Chicago, IL 60612 | Harriet Tidwell, Manager Kenzelle Belle | (312) 791-8495 | Grenshire Realty Corp. 1250 Pennsylvania Avenue Brooklyn, NY 11239 | Jane Krieger | 718-240-4106 718-642-2187 Fax | John Mason | 129 |
| Ida B. Wells 454 E. Pershing Road Chicago, IL 60616 | Patricia Dudley, Manager | 791-8461/8782 136-6803 Fax | Chicago Housing Authority 4500 South State Street Chicago, IL 60609 | George Phillips | 567-6000 | | |
| King Drive Walk-Ups 3849 S King Drive, #417 Chicago, IL 60616 | Mae Hampton, Manager Nicole King | (773) 548-0680 (773) 548-0657 Fax | The Woodlawn Organization 6040 South Harper Chicago, IL 60637 | Carole Millison | (773) 288-5840 | John Mason | 464 |
| Wells Extension 511 East Browning, #103 Chicago, IL 60653 | Deborah Mallory | (773) 373-8700 (773) 373-5727 Fax | The Woodlawn Organization 6040 South Harper Chicago, IL 60637 | Carole Millison | 288-5840 288-6173 Fax | John Mason | 650 |
| Wells E-Section #151 511 East Browning, #103 Chicago, IL 60653 | Shirley Cherry, Manager | (773) 373-8700 (773) 373-5727 Fax | The Woodlawn Organization 6040 South Harper Chicago, IL 60637 | Carole Millison | 288-5840 288-6173 Fax | | |
| Darrow Homes 730 East 39th Street Chicago, IL 60616 | Teorti Thomas, Manager Barbara Hasson | (773) 624-7765 (773) 624-7409 Fax | Diversified Realty Group 439 East 31st Street Chicago, IL 60616 | Debra Hunter | 842-0911 842-4333 Fax | Janet Abrahams | 160 |
| Prairie Courts 2616 South King Drive Chicago, IL 60616 | Edward Grady, Manager Anita Mackey Dorris Tyler | (312) 567-5352 (312) 567-3306 Fax | The Woodlawn Organization 6040 South Harper Chicago, IL 60637 | Carole Millison | 288-5840 288-6173 Fax | Phyllis Stauffenberg | 324 |
| Lake Parc Place 3093 South Lake Park Chicago, IL 60653 | Toi Perkins, Manager Veroca Nichols | (773) 536-4339 (773) 536-3407 Fax | Associates of Triangle, Inc. 8303 Craig Street Indianapolis, IN 46250-0830 | James Haynes | 317-842-6612 317-576-7982 Fax 1-800-653-6612 | Phyllis Stauffenberg | 300 |
| Judge Green Apartments 4030 South Lake Park Chicago, IL 60653 | Tina Turner, Manager | (773) 538-3373 (773) 516-3107 Fax | Associates of Triangle, Inc. 8303 Craig Street Indianapolis, IN 46250-0830 | James Haynes | 317-842-6612 317-576-7982 Fax 1-800-653-6612 | Phyllis Stauffenberg | 154 |
| Archer Courts 2242 S. Princeton, 1st Fl Chicago, IL 60616 | Nancy Lem, Manager | (312) 791-0458 (312) 791-1696 Fax | NEP Management Company 100 Forest Avenue, P-34 Oak Park, IL 60301 | Tom Pikula | 708-445-9600 708-445-9642 | Phyllis | 147 |
| Lathrop Elderly 2717 N. Leavitt Chicago, IL 60647 | Conric Sanchez, Manager | (773) 296-3095 (773) 296-6195 Fax | Lutheran Social Services LaViranda 5025 North California Chicago, IL 60622 | Victor Hernandez | 342-1344 342-3659 Fax | Janet Abrahams | 92 |

CHA

page 1

C.H.A. OPERATIONS    ID:7735383344    JUN 27,97    11:36 No.001 P.01

# CHICAGO HOUSING AUTHORITY
Private Management Administration
37 West 47th Street, Chicago, IL 60609
Telephone # 567-1825, Fax # 624-0878

| PROPERTY NAME/ ADDRESS | SITE MANAGEMENT STAFF | PHONE/FAX PAGER | MANAGEMENT COMPANY PRINCIPAL | CONTACT PERSON | PHONE/FAX PAGER | MANAGEMENT ANALYST | TOTAL UNITS |
|---|---|---|---|---|---|---|---|
| Rockwell Gardens 1314 W. 15th St., Ste. 307 Chicago, IL 60608 | Dee Reid, Midday Manager Greta Robinson | (312) 226-4542 Fax | AIMP Rain-Groundworker Company 100 Forest Avenue, P-24 Oak Park, IL 60301 | Darcy Pfeihulter | 708-445-9642 | Steuffenberg | 1130 |
| Maplewood Courts 320 S. Maplewood, Ste. 105 Chicago, IL 60612 | Wanda Johnson, Manager | (312) 563-0059 (312) 563-0043 F | Near North Property/ William Moorehead & Assoc. | Phyllis Shunkel | 440-9600 440-1422 Fax | Phyllis Steuffenberg | 132 |
| Harrison Courts 2650 W. Harrison St., Ste 103 Chicago, IL 60612 | Denise Ellis, Manager | (773) 722-2231 (773) 522-3524 Fax | Near North Property/ William Moorehead & Assoc. 875 North Dearborn Chicago, IL 60610 | Phyllis Shunkel | 440-9600 440-1422 Fax 266-0232 | Phyllis Steuffenberg | 126 |
| | | | 875 North Dearborn Chicago, IL 60610 | Lola Hillman | 266-9345 Fax | | |
| Ogden Courts 2710 W. Ogden, 1st flr. Chicago, IL 60608 | Shirley Wright, Manager Tambra Cartledge | 277-1218 277-1552 Fax | William Moorehead & Assoc. 875 North Dearborn Chicago, IL 60610 | Lola Hillman | 266-0232 266-9345 Fax | Phyllis Steuffenberg | 136 |
| North West Scattered Sites 1323 West Wilson Chicago, IL 60640 | Jerry Williams, Manager | (773) 769-1555 (773) 769-3085 Fax | Housing Resource Center 1139 West Wilson Chicago, IL 60640 | Phyllis Shunkel | (773) 769-1555 266-9345 Fax | Janet Abrahams | 457 |
| North West Scattered Sites 925 North California Chicago, IL 60622 | Victor Hernandez, Manager Nerry | (773) 342-1344 (773) 342-3659 Fax | Lutheran Social Service 1001 East Touhy Ave., S-30 Desplaines IL 60018 | Sue Brody | (847) 635-4600 (847) 390-1426 Fax | Janet Abrahams | 449 |
| N-Cntrl Scattered Sites 3612 W. North Avenue Chicago, IL 60647 | Josephine Lopez Irene | (773) 276-3395 (773) 276-1844 (773) 276-7280 Fax | Hispanic Housing Dev. Corp. 325 W. Wacker Place, Suite 2300 Chicago IL 60606 | Dilia Saeedi Wendy Boston | 432-1360 443-1038 Fax | Janet Abrahams | 564 |
| S-West Scattered Sites 9046 S. Ashland Chicago, IL 60620 | Pat Jones, Manager | (773) 238-3379 (773) 238-4046 Fax | Pinnacle Realty Management 1025 Connecticut Ave., N.W. S-904 Washington, DC 10036 | Judith K. Martin | (202) 785-6266 (202) 785-6776 Fax | John Mason | 246 |
| South East Scattered Sites 6023 1/2 S. Harper Chicago, IL 60637 | Ernest Edokin, Manager | (773) 324-6305 (773) 324-5422 Fax | The Woodlawn Organization 6029 1/2 South Harper Chicago, IL 60637 | Carole Millican | 288-5840 788-6173 Fax | John Mason | 460 |
| Westside Scattered Sites 3167 W. Madison Chicago, IL 60612 | Maye Hayes, Manager Sharon Pugsley | (773) 533-0905 (773) 533-1059 Fax | William Moorehead & Assoc. 875 North Orleans Chicago, IL 60610 | William Moorehead AJ Burns | 266-0232 266-9345 Fax 657-3491 Pager | John Mason | 348 |

JUN 27 97  11:57 No.001 P.02  ID:7735385544  C.H.A. OPERATIONS  619497

# CHICAGO HOUSING AUTHORITY
Private Management Administration
37 West 47th Street; Chicago, IL 60609
Telephone # 567-1825, Fax # 624-0878

| PROPERTY NAME/ ADDRESS | SITE MANAGEMENT STAFF | PHONE/FAX PAGER | MANAGEMENT COMPANY | PRINCIPAL | CONTACT PERSON | PHONE/FAX PAGER | MANAGEMENT ANALYST | TOTAL UNITS |
|---|---|---|---|---|---|---|---|---|
| Senior/Abraham Lincoln Centre 9141 South Chicago Chicago, IL 60617 | Joe Bell, Managing Director | (773) 731-4121 Fax | Best Lease Management Firm 222 North LaSalle St. S-1414 Chicago, IL 60601 | Lena Riggsleiter | Glenda Sally | 346-3260 Fax | John Marenburg | 129 |
| Hilliard Family 2030 S. State Apt 103 Chicago, IL 60616 | Senoh McShooey, Manager Mario Williams | (312) 225-5910 (312) 225-6020 Fax | Dominium Management Co. 2500 W. 56th St. S-1114 Hialeah, FL 33016 | Maggie Pedraza | Maggie Pedraza | (305) 556-0452 (305) 556-8467 Fax | Lynda Kennedy | 346 |
| Hilliard Senior 30 West Cermak Chicago, IL 60616 | Zelvee Johnson, Manager Bill Petterson | (312) 225-5730 (312) 225-5715 Fax | Dominium Management Co. 2500 W. 56th St. S-1114 Hialeah, FL 33016 | Elizabeth | | 567-1301 | | |
| | | | Dominium Regional Office 2111 South Clark Street, S-1600 Chicago, IL 60616 | James W. Dikens | | 567-1335 Fax | | |
| | | | Dominium Regional Office 2111 South Clark Street, S-1600 Chicago, IL 60616 | Jaizer Johnson | Charles Jones | 567-1335 Fax | | |
| Burton Senior Apartments 1611 South Racine Chicago, IL 60608 | Rick Castro, Manager | (312) 829-1313 (312) 829-1317 Fax | The Habitat Company 350 West Hubbard S-500 Chicago, IL 60610 | Al McCowan | Al McCowan | 527-5400 527-7440 Fax | John Mason | 212 |
| Henry Horner 1834 West Washington Chicago, IL 60612 | Ana Harris Ms. Bailey, Asst. Manager | (312) 455-9937 (312) 421-4676 Fax | East Lake/Crescufir 2800 S. Michigan Ave. Chicago, IL 60616 | Ann Harris | | (312) 842-5500 (312) 842-0765 Fax | Janet Abrahams | 1429 |
| Madden Park 3750 South Ellis Chicago, IL 60653 | Rosemary Hayes, Manager | (773) 538-4635 (773) 368-8259 Fax | The Habitat Company 350 West Hubbard, S-500 Chicago, IL 60610 | Al McCowan | | 527-5400 527-7440 Fax | Phyllis Stauffesberg | 486 |
| Altgeld/Murray Alternative Bldg. 960 E. 132nd Place Chicago, IL 60627 | | (773) 291-6065 (773) 568-3477 Fax | RMC/Private Mgmt. | Barbara Chandler | | 291-6063 568-3477 Fax | Lynda Kennedy | |
| Leclaire Courts 4418 S. Laporte Chicago, IL 60638 | Chiu Shields, Manager | (312) 791-8864 (312) 363-1477 Fax | PML, Ltd. First In Property Mgmt. 1621 E. 53rd Street Chicago, IL 60615 | Carl Sanders | | (773) 324-9010 (773) 324-9042 | Lynda Kennedy | |
| Dearborn Homes 2960 S. Federal Chicago, IL 60616 | Gail Singleton, Manager | (312) 791-3570 (312) 791-3400 Fax | RMC 2710 S. State #108 Chicago, IL 60616 | Nicoli McMiller | | 326-3730 567-1426 Fax | Lynda Kennedy | 800 |
| 1230 N. Burling Chicago, IL | Deborah Mason, Manager | (312) 943-5147 (312) 943-6957 Fax | RMC | Con Moore | | 943-5147 | John Mason | 134 |

C.H.A. OPERATIONS                ID:7735383344            JUN 27'97 11:58 No.001 P.05

# CHICAGO HOUSING AUTHORITY
Private Management Administration
37 West 47th Street; Chicago, IL 60609
Telephone # 567-1825; Fax # 624-0878

| PROPERTY NAME ADDRESS | SITE MANAGEMENT STAFF | PHONE/FAX PAGER | MANAGEMENT COMPANY | PRINCIPAL | CONTACT PERSON | PHONE/FAX PAGER | MANAGEMENT ANALYST | TOTAL UNITS |
|---|---|---|---|---|---|---|---|---|
| Rockwell Gardens, 1750 W. Peterson, Chicago, IL | Joe Beal, Manager | (312) 455-0265 | East Lake/Grenadier | 1729 W. Wilson, Chicago, IL 60640 | Leroy Bannister | 842-5500 | John Mason | 1135 |
| | Jenny Kolozarri, Manager | (773) 743-4311 (773) 743-4506 | Housing Resource Center | | Sue Brady | 769-1555 769-1085 (Fax) | Janet Abrahams | 179 |
| Sheridan & Devon Apts., 6400 N. Sheridan, Chicago, IL 60626 | Robert Sawa, Manager | (773) 743-7235 (773) 743-7333 Fax | Don S. Samuelson & Associates (DSSA), 310 N. Milwaukee, Lake Villa Tours, IL 60046 | Don Samuelson | (847) 356-7800 (847) 356-8791 | Janet Abrahams | 450 |
| Bridgeport Homes, 3175 S. Lituanica, Chicago, IL 60608 | Marcia Jordan, Manager | (312) 674-9424 (312) 674-9436 Fax | PM One Management, 5110 S. King Drive, Chicago, IL 60615 | Carl Sanders | (773) 324-9010 (773) 324-9082 | Janet Abrahams | 193 |
| Lake Michigan Apts., 4227 S. Oakenwald, Chicago, IL 60653 | Demetria Winkler, Manager | (773) 536-5301 (773) 536-5750 Ext. | William Moorehead & Associates, 875 N. Orleans, Chicago, IL 60610 | Al Burns | 266-0232 266-9345 (Fax) | John Mason | 124 |
| Lawndale Complex, 2301 S. California, Chicago, IL 60623 | Vinessa Powell, Manager; Ms. Griffith, Asst. Manager | (773) 542-0750 (773) 542-0851 Fax | William Moorehead & Associates, 875 N. Orleans, Chicago, IL 60610 | Lola Hillman | 266-0232 266-9345 (Fax) | John Mason | 315 |
| Patrick Sullivan Senior Apts., 1633 W. Madison, Chicago, IL 60612 | Rosa Moore, Manager | (312) 243-6340 Fax (312) 243-7419 | The Habitat Company, 350 W. Hubbard, S-506, Chicago, IL 60610 | Al McGowen | 527-5400 | John Mason | 463 |
| Campbell Apartments, 6350 S. Minerva, Chicago, IL 60637 | Barbara Pullman, Manager | (773) 955-6360 No Fax | William Moorehead & Associates, 875 N. Orleans, Chicago, IL 60610 | Al Burns | 266-0232 266-9345 (Fax) | Lynda Kennedy | 165 |
| Flannery Apartments, 1507-31 N. Cleburn, Chicago, IL | Maria Reyes, Manager | (312) 266-1299 (312) 266-1407 (Fa) | East Lake/Grenadier, 2850 S. Michigan Ave., Chicago, IL 60615 | Ana Harris, Stanley Cohen | (312) 842-5100 (312) 842-0265 (Fax) | Lynda Kennedy | 200 |
| Grandview/Eckhart Apts., 847 N. Greenview / 845 N. Noble, Chicago, IL 60622 | Marian Stewart, Manager; Velveria Hearon, Asst. Mgr | (312) 421-2435 (312) 421-2334 FA | Hispanic Housing Dev. Corp., 325 W. Wacker Drive, Suite 2300, Chicago, IL 60606 | Wendy Bosson | 443-1360 443-1058 (Fax) | John Mason | 399 |

| ACORD. | CERTIFICATE OF INSURANCE | | | | DATE (MM/DD/YY) 06/02/(8 |
|---|---|---|---|---|---|
| PRODUCER<br>Hugh Wood Inc.<br>The Bellevue, 9th Floor<br>200 South Broad Street<br>Philadelphia, PA 19102<br>001-3401  (215) 732-0671 | | | colspan="4" | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |

| | COMPANIES AFFORDING COVERAGE |
|---|---|
| COMPANY A | National Union Fire Ins. Co. of Pittsburgh, PA |
| COMPANY B | See Reverse |
| COMPANY C | Royal Insurance Company of America |
| COMPANY D | |

INSURED
APEX Site Management, L.P. &/or
The Rubin Organization, Inc., et al.
The Bellevue, 3rd Floor
200 South Broad Street
Philadelphia, PA 19102

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN. THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|
| **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>__ CLAIMS MADE  X OCCUR<br>X OWNERS & CONT PROT | GL 501 2852 | 06/30/96 | 06/30/97 | GENERAL AGGREGATE<br>PRODUCTS-COMP/OP AGG<br>PERSONAL & ADV INJURY<br>EACH OCCURRENCE<br>FIRE DAMAGE (Any one fire)<br>MED EXP (Any one person) | $ 2,000,000<br>$ 2,000,000<br>$ 1,000,000<br>$ 1,000,000<br>$ 1,000,000<br>$ 5,000 |
| **AUTOMOBILE LIABILITY**<br>__ ANY AUTO<br>__ ALL OWNED AUTOS<br>__ SCHEDULED AUTOS<br>X HIRED AUTOS<br>X NON-OWNED AUTOS | GL 501 2852 | 06/30/96 | 06/30/97 | COMBINED SINGLE LIMIT<br>BODILY INJURY (Per person)<br>BODILY INJURY (Per accident)<br>PROPERTY DAMAGE | $ 1,000,000<br>$<br>$<br>$ |
| **GARAGE LIABILITY**<br>__ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT<br>OTHER THAN AUTO ONLY:<br>EACH ACCIDENT<br>AGGREGATE | $<br>$<br>$ |
| **EXCESS LIABILITY**<br>X UMBRELLA FORM<br>__ OTHER THAN UMBRELLA FORM | See Reverse | 06/30/96 | 06/30/97 | EACH OCCURRENCE<br>AGGREGATE | $ 150,000,000<br>$ 150,000,000<br>$ |
| **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**<br>THE PROPRIETOR/  X INCL<br>PARTNERS/EXECUTIVE __ EXCL<br>OFFICERS ARE:<br>OTHER | PCS 335 576 | 04/01/96 | 04/01/97 | STATUTORY LIMITS<br>EACH ACCIDENT<br>DISEASE - POLICY LIMIT<br>DISEASE - EACH EMPLOYEE | $ 1,000,000<br>$ 1,000,000<br>$ 1,000,000 |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

CERTIFICATE HOLDER

TO WHOM IT MAY CONCERN

CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE

ACORD 25-S (3/93)   © ACORD CORPORATION 1993